# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL RODRIGUEZ, | Case No. 1:09-cv-01784-AWI-MJS (PC) |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT AND GRANTING LEAVE TO FILE SECOND AMENDED COMPLAINT |
| v. | |
| ISAAC, et al., | (Doc. 22) |
| Defendants. | RESPONSE DUE WITHIN THIRTY (30) DAYS |

**I.  SCREENING ORDER**

**A.  Procedural History**

On October 9, 2009, Plaintiff Noel Rodriguez, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, Compl.) The Complaint was dismissed on July 12, 2011 for failure to state a cognizable claim. (Doc. 21, O Screen.) Plaintiff was granted leave to amend and filed the First Amended Complaint on August 1, 2011 (Doc. 22, 1st AC) which is before the Court for screening.

**B.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (*quoting* 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

### C. Plaintiff's Allegations[1]

Plaintiff is currently housed at Ironwood State Prison ("ISP"), but complains of events that occurred in Corcoran, California, both at Corcoran State Prison ("CSP") and California Substance Abuse Treatment Facility and State Prison ("SATF"). Plaintiff names Defendants from each facility, to wit: CSP SHU Committee Counselor Isaac; SATF Warden Ken Clark; SATF Gun-Tower Guards John Does 1-5; SATF Yard Prison Guards John Does 6-8; SATF Yard Prison Sergeants John Does 9 and 10; SATF Yard Captain John Doe 11; SATF Yard Lieutenant John Doe 12; SATF Appeals Coordinator, John Doe 13; and SATF Counselors Henne and Hanson.[2] Plaintiff seeks injunctive and punitive monetary relief.

#### 1. Allegations at CSP

Plaintiff alleges that he was transferred to the Security Housing Unit ("SHU") at CSP in

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] Plaintiff also alleges, "[a]s far as, John Doe(s), Facility Captain; J. Lawrence, Committee Member; [and] S. Sherman, Committee Chairperson . . . [Plaintiff] retract[s his] claim against them for lack of facts. But [he] reserve[s] the right to raise [his] complaints should new evidence arise." (Doc. 22, at p. 19.) Plaintiff does not state any factual allegations against these defendants and thus fails to link them to any cognizable claims. If Plaintiff feels that new evidence justifies resurrecting his claims against these defendants, he will have to comply with all requirements set forth in the Federal Rules of Civil Procedure and the Local Rules to amend his pleading.

March of 2008. (Doc. 22, 1st AC, p. 10.) On March 13, 2008, Plaintiff was evaluated for yard placement and, due to a history of violent behavior and negative interactions with the "South Siders" prison gang ("South Siders"), was offered protective custody yard. (Id., at pp. 10-11.) Upon refusal, Plaintiff was placed in solitary confinement. (Id.) Five months later, in August of 2008, Plaintiff's release to the yard was again considered and Plaintiff was advised that protective custody yard would be safest for him since South Siders wanted to kill him. (Id.) Plaintiff again declined protective custody yard and was kept in solitary confinement due to his violent history and concomitant safety concerns. (Id.)

On August 6, 2008, Defendant Isaac met with Plaintiff and advised that she was considering releasing him to the yard, but that it would be better for him to program in a protective custody yard since South Siders wanted to kill him. (Id.) Plaintiff again refused protective custody yard and when Defendant Isaac insisted, Plaintiff inquired whether he might be placed in a yard separate from South Siders which Defendant Isaac indicated was "not possible." (Id.) The following day, Defendant Isaac and committee members released Plaintiff to general population on a finding that security concerns no longer existed between Plaintiff and South Siders. (Id.) Plaintiff alleges that these actions by Defendant Isaac violated his rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Id., at pp. 11-12.)

**2.      Allegations at SATF**

In November of 2008, Plaintiff was transferred and arrived at SATF "S/P General Population." (Id., at p. 14.) On December 16, 2008, Plaintiff was cleared for general population. (Id.)

On June 1, 2009, two South Siders attacked Plaintiff. (Id.) Plaintiff alleges that it took five months from his placement at SATF for South Siders to attack him due to the Mexican Mafia hierarchy, the time it takes for a hit to be ordered and received via general mail, and the fact that yard access at SATF was restricted for weeks on end due to repeated acts of violence. (Id., at pp. 14-15.) It took more than five months for South Siders to receive their order to attack Plaintiff and gain yard access to carry it out.

1       On the day Plaintiff was attacked, Does 6-9 were responsible for securing the yard and
2  declared it secure (i.e. devoid of weapons and/or contraband prior to release of inmates). (Id., at
3  p. 16.) Plaintiff and his attackers entered the yard at approximately 10:00 a.m. after submitting to
4  a strip search and passing through a metal detector. (Id., at pp. 16-17.)

5       Around noon, Plaintiff was attacked by two South Siders. (Id., at pp. 14, 17.) During the
6  30 second attack, Plaintiff was stabbed twelve times throughout his chest, arms, and head. (Id.,
7  at p. 17.) Does 6-9 sat and watched the attack take place and did nothing to stop it, waited until
8  the attackers ceased, and then handcuffed all three inmates. (Id.) Plaintiff alleges these actions
9  by Does 6-9 amounted to deliberate indifference in violation of the Eighth Amendment. (Id.)
10 Likewise, though he heard the instruction to "get down" yelled approximately ten times, Plaintiff
11 alleges that Does 1-5 were deliberately indifferent in violation of the Eighth Amendment when
12 they failed to fire any shots to stop the attack. (Id., at p. 18.) Plaintiff further alleges that Does 9
13 and 10 violated the Eighth Amendment when they failed to order Does 1-8 to stop the attack.
14 (Id., at p. 19.) Plaintiff alleges that Does 11 and 12 failed to provide effective training prior to
15 the June 1st attack. (Id.)

16      On June 10, 2008, Plaintiff filed a complaint and served it on both Defendants Isaac and
17 Clark, but did not receive a response from either of them. (Id., at p. 20.) Plaintiff alleges that
18 Doe 13 failed to process his complaints to Defendants Isaac and Clark, thus violating his right of
19 access to the court under the First Amendment. (Id., at p. 21.)

20      In June of 2009, Plaintiff alleges that his property was misplaced or lost such that he was
21 unable to present evidence challenging his underlying criminal conviction. (Id., at p. 21.)
22 Plaintiff also alleges that he requested a review of his central and medical files which was not
23 responded to. (Id., at p. 22.) Plaintiff alleges that Defendants Correctional Counselors Henne
24 and Hanson refused to exhaust/respond to his complaints such that his rights under the Equal
25 Protection clause of the Fourteenth Amendment were violated.

26      Plaintiff may be able to amend to correct the deficiencies in his pleading so as to state
27 some cognizable claims. Thus, he is being given leave to file a second amended complaint based
28 on the applicable standards and rules discussed herein.

D.  **Pleading Requirements**

 1. **Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) *quoting* Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusion are not. Iqbal. at 1949; *see also* Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009); Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 556-557. "[P]laintiffs [now] face a higher burden of pleadings facts . . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If he chooses to file a second amended complaint, Plaintiff should endeavor to make it as

concise as possible.  He should merely state which of his constitutional rights he feels were violated by a given Defendant and the factual basis.

### 2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See* Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to link Defendants Warden Clark, Lawrence, and/or Sherman to any of his allegations such that they are properly dismissed.  In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights to put each Defendant on notice of Plaintiff's claims against him or her.  *See* Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 3. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-

for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.

The First Amended Complaint violates Rule 18 as it contains a number of claims that are not related. It appears that three groupings of unrelated claims can be made from Plaintiff's allegations: (1) Equal Protection and Eighth Amendment claims against Defendant Isaac at CSP; (2) Eighth Amendment and First Amendment claims against Defendants Does 1-13 at SATF; and (3) Equal Protection and Fourteenth Amendment claims against Defendants Henne and Hanson at SATF.[3] The Court has reviewed, and herein address, all of Plaintiff's claims in the First Amended Complaint, though unrelated, so that Plaintiff might choose which claim(s) he feels will be most successful to pursue in this action, if at all, and whether to pursue unrelated claims in different actions.[4]

Plaintiff must file separate pleadings/complaints for each unrelated claim against different defendants at different facilities. Plaintiff is advised that if he chooses to file a second amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be subject to dismissal.

---

[3] Claims against prison personnel at different facilities are generally unrelated and Plaintiff alleges no basis to reasonably infer that the actions of the guards and prison personnel at SATF during and after the June 2009 attack were related to Defendant Isaac's involvement in March of 2008 at CSP. Plaintiff is not granted leave to amend to show relation between these claims as an argument by Plaintiff that the lifting of his indeterminate SHU term at CSP caused him to be subjected to deliberate indifference by the prison personnel at SATF when attacked in the general population yard at SATF as such a claim is not facially plausible. As evidenced by Plaintiff's allegations, each facility conducts its own review and/or investigation to determine housing and yard placement of inmates. (Doc. 22, 1st A.C., pp. 12, 14, 36, 45.) Further, a decision regarding lifting an indeterminate SHU term at one facility has nothing to do with how the guards of the general population yard react when an inmate is being attacked at another facility.

[4] Plaintiff is reminded that filing an action based on claims that are not cognizable and/or frivolous may adversely affect his ability to file actions in forma pauperis in the future. 28 U.S.C. § 1915(g).

E.  **Relief Sought**

Plaintiff seeks both punitive damages and injunctive relief. (Doc. 22, 1st A.C., p. 23.)

1.  **Punitive Damages**

Punitive damages are available under § 1983, *see* Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 17 (1991), and are available even when a plaintiff is unable to show compensable injury *see* Smith v. Wade, 461 U.S. 30, 55, n. 21 (1983). Moreover, punitive damages may be the only significant remedy available in some actions under § 1983 where constitutional rights are maliciously violated but the victim cannot prove compensable injury. *See* Smith v. Wade, 461 U.S. 30, 55 (1983). However, punitive damages are not available against municipalities, *see* Kentucky v. Graham, 473 U.S. 159, 167, n. 13; nor are they available against state officials sued in their official capacities, *see* Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). Awards of punitive damages are left to the jury's discretion upon a finding that the defendant either acted with an evil motive or with reckless/callous indifference to the plaintiff's federally protected rights. *See* Smith, 461 U.S. at 54, 56; Dang v. Cross, 422 F.3d 800, 807-09 (9th Cir. 2005). Accordingly, all of Plaintiff's claims for punitive damages against the named defendants in their official capacities are dismissed and not subject to amendment.

2.  **Injunctive Relief**

In addition to monetary damages, Plaintiff seeks injunctive relief. Where a prisoner challenges conditions of confinement and seeks injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence[5] of an expectation of being transferred back. *See* Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); *see also* Andrews v. Cervantes, 493 F.3d 1047, 1053, n.5 (9th Cir. 2007). Accordingly, subsequent transfers, such that he is not currently housed

///

---

[5] Mere allegations that a Plaintiff might be transferred back to the offending facility, or that such is always a possibility, are remote and speculative and insufficient to cast the "continuing and brooding presence" required to grant injunctive relief. *See* Preiser, 422 U.S. at 403.

at either CSP or SATF,[6] rendered Plaintiff's claims for injunctive relief moot such that they are dismissed and not subject to amendment.

### F. Plaintiff's Claims

#### 1. Eighth Amendment – Failure to Protect

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (*citing* Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" Id., at 843 (*citing* Helling, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id., at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id., at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Id., at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

---

[6] Plaintiff is currently housed at ISP.

The Supreme Court has stated that a remedy for unsafe conditions need not await a tragic event. Where a risk/injury has yet to occur, the plaintiff's burden is to show that his future health/safety is unreasonably endangered, "that it is contrary to current standards of decency for anyone to be so exposed against his will, and that prison officials are deliberately indifferent to his plight." Helling, 509 U.S. at 33-35.

### a.     Claims Against Defendant Isaac

To begin with, Plaintiff alleges that prior to his release into the general population yard, Defendant Isaac twice offered him placement on the protective custody yard – which Plaintiff refused. (Doc. 22, 1st A.C., pp. 10-11.) The offers to place Plaintiff on the protective custody yard indicate that Defendant Isaac was not deliberately indifferent to Plaintiff's situation with South Siders. Rather, it appears that Plaintiff's refusal to "program with child molesters and rapists in a protective custody yard" played at least a minor roll in his ultimate placement on the general population yard. (Id., at pp. 11-12.) Further, Plaintiff's evidence shows in his own handwriting that he "chose to program with the Southern Hispanics [South Siders]" when he was given the choice between that and protective custody. (Id., at pp. 52-53, 86-87.)

Also, even though Plaintiff alleges he was endorsed for general population yard at CSP, his exhibits actually show that though he was cleared for yard at a Level IV, 180 facility while at CSP (a 270 facility), he was retained in CSP's ASU pending transfer because his release into general population "may present an immediate threat to the safety and security of self/others as well as the security of the institution." (Id., at pp. 13, 38.) Being a member of the committee that elected to retain Plaintiff in ASU pending transfer due to safety/security concerns does not equate to deliberate indifference by Defendant Isaac. The exhibits also show that Plaintiff was present at the hearing where his SHU placement was reviewed, agreed with the committee's decision, and stated that he did not have safety concerns. (Id., at p. 38.) Defendant Isaac's actions on the committee cannot be said to have been deliberately indifferent to a serious risk to Plaintiff's safety when Plaintiff both agreed with the committee's decision and stated that he did not have safety concerns.

1         Both Plaintiff's allegations and exhibits show that four people were on the committee that
2 reviewed and lifted Plaintiff's indeterminate SHU term (id., at pp. 12, 38) and that all placement
3 decisions were made by such a committee (*see e.g.,* id., at pp. 36, 38, 43, 45).  Plaintiff does not
4 address how, out of a four person committee, Defendant Isaac would have any greater than one-
5 quarter of the decision making authority so as to make his change in yard placement attributable
6 solely to Defendant Isaac.  Nor does Plaintiff show how Defendant Isaac's vote on the four-
7 person committee carried any greater weight than the votes of the other committee members.
8         Additionally, even if Plaintiff could show that Defendant Isaac acted with deliberate
9 indifference in her role regarding his release from the SHU, Plaintiff's allegations show that the
10 actions complained of neither caused him actual injury, nor caused his future health/safety to be
11 unreasonably endangered.  Plaintiff's allegations show that he was attacked by South Siders on
12 the SATF general population yard on June 1, 2009 (id., at p. 17), which was: (1) roughly ten
13 months after Defendant Isaac and the committee at CSP recommended his indeterminate SHU
14 status be lifted and Plaintiff be held in ASU pending transfer to a Level IV, 180 facility; (2)
15 approximately seven months after he was transferred out of CSP to SATF (id., at pp. 11, 14); and
16 (3) approximately five and a half months after the committee at SATF cleared him for the general
17 population yard (id., at p. 45).  The fact that the attack took place on the general population yard
18 at a different facility coupled with the ten months lapse of time between the allegations against
19 Defendant Isaac and the attack on Plaintiff at a different facility (SATF) make Defendant Isaac's
20 involvement too attenuated to have caused Plaintiff's alleged injury – particularly given the
21 intervening release of Plaintiff to the general population yard by the placement committee at
22 SATF which Plaintiff stated he agreed with.  (Id.)
23         Plaintiff alleges that "it took five months for South Siders to attack" him because the
24 Mexican Mafia is housed in Pelican Bay and CSP and they relay their orders to South Siders via
25 U.S. Mail which is delayed by inspection/decoding by prison officials.  (Id., at pp. 14-15.)
26 However, this explanation does not suffice to make the attack at SATF Defendant Isaac's
27 liability.  While Plaintiff was attacked by South Siders a little over five months after he was
28

1  placed in the SATF general population yard, it occurred approximately ten months subsequent to
2  Defendant Isaac's actions at a different facility.  This lapse of time and change in facility is
3  simply too far removed from Defendant Isaac's actions at CSP to connect or link Defendant Isaac
4  to the attack at SATF on June 1st.  *See* Monell, 436 U.S. 658; Rizzo, 423 U.S. 362.

Further, Plaintiff's allegations do not show, and cannot honestly be amended to show, that his future health/safety at ISP[7] is unreasonably endangered as a result of Defendant Isaac's involvement in Plaintiff's placement in the general population yard at CSP – particularly since Plaintiff was subsequently returned to ASU.  (Doc. 22, 1st AC, p. 47.)

Accordingly, Plaintiff fails to state a cognizable deliberate indifference claim against Defendant Isaac.  Even if he did, Defendant Isaac is not sufficiently linked to the injuries Plaintiff sustained when he was attacked on the SATF general population yard.[8]

### b.     Claims Against Does 1-10

Plaintiff alleges that, on the date he was attacked, Does 6-9 were responsible for securing the yard and declaring it secure (i.e. devoid of weapons and/or contraband prior to release of inmates).  (Id., at pp. 16-17.)  Plaintiff also alleges that Does 6-9 sat and watched the attack take place and did nothing to stop it, waiting until the attackers ceased, and then handcuffing all three inmates.  (Id., at p. 17.)  Plaintiff alleges these actions by Does 6-9 amounted to deliberate indifference in violation of the Eighth Amendment.  (Id.)  Likewise, though he heard the instruction to "get down" yelled approximately ten times, Plaintiff alleges that Does 1-5 were deliberately indifferent in violation of the Eighth Amendment when they failed to fire any shots to stop the attack (id., at p. 18) and that Does 9 and 10 violated the Eighth Amendment when they failed to order Does 1-8 to stop the attack (id., at p. 19).

These allegations would normally state cognizable Eighth Amendment claims against Does 1-10 for failing to act to stop the attack in which he was repeatedly stabbed by two South

---

[7] Plaintiff is no longer housed at either CSP or SATF; rather he is currently housed at ISP.

[8] If Plaintiff were able to state a cognizable claim against Defendant Isaac, as discussed above, he would only be able to pursue punitive damages against her in her individual capacity.

Sider inmates in their view. However, Plaintiff attached a copy of a declaration he filed in California Superior Court as Exhibit R-18 to the First Amended Complaint. (Id., at pp. 77-91.) In that declaration, Plaintiff describes the attack and states "[t]he cops break it up and they handcuff us all and airlift [Plaintiff] to Fresno County Community Medical Center." (Id., at p. 90, ¶ 74.) This statement in his declaration conflicts with Plaintiff's allegations that Does 6-9 did nothing to stop the attack and waited for it to stop before they handcuffed all three inmates. (Id., at p. 17.) It appears that Plaintiff has violated Rule 11 via submitting these two contradicting statements – the correctional officers could not both have waited until the attack was over and broken it up. Accordingly, if Plaintiff attempts to amend to pursue these claims he is ordered to cogently explain this inconsistency or this action will be striken from the record as a sanction for Plaintiff's lack of candor to the Court. Thus, Plaintiff is not allowed to proceed on his claims of deliberate indifference against Does 1-10 and will not be allowed to do so unless he provides sufficient explanation as to the contradictions between the allegations of the First Amended Complaint and exhibits attached thereto.

### 2. Fourteenth Amendment – Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. *See e.g.*, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated

1  differently without a rational relationship to a legitimate state purpose.  Engquist v. Oregon
2  Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of
3  Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000) (coining the term "class of
4  one"); Gonzalez-Medina v. Holder, 641 F.3d 333, 336 (9th Cir. 2011); Lazy Y Ranch Ltd. v.
5  Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d
6  478, 486 (9th Cir. 2008).  To state a claim as a class of one, a plaintiff must articulate who he is
7  similarly situated to and how they are similar in order for disparate treatment to equate to a
8  violation of his rights to equal protection.  *See* McCollum v. California Dept. Of Corrections and
9  Rehabilitation, 647 F.3d 870, 880-81 (9th Cir. 2011), *citing* Flores v. Morgan Hill Unified Sch.
10 Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).

11     Plaintiff alleges that Defendant Isaac's involvement in clearing him for the general
12 population yard while knowing that South Siders wanted to kill him violated his rights under the
13 Equal Protection Clause.  (Doc. 22, 1st A.C., at pp. 11-12.)

14     Plaintiff also alleges that in June of 2009, his property was misplaced or lost such that he
15 was unable to present evidence challenging his underlying criminal conviction (Doc. 22, 1st
16 A.C., at p. 21); that he requested a review of his central and medical files which was not
17 responded to (id., at p. 22); and that Defendants Correctional Counselors Henne and Hanson
18 refused to exhaust/respond to his complaints such that his rights under the Equal Protection
19 Clause were violated (id.).

20     Plaintiffs allegations do not show that he was a member of a protected class so as to state
21 a cognizable traditional, discriminatory equal protection claim against Defendant Isaac, Henne,
22 and/or Hanson.  Plaintiff's allegations against Defendants Henne and Hanson also do not show
23 that they treated him any differently from other similarly situated individuals.  However, it
24 appears that Plaintiff is attempting to state an equal protection claim against Defendant Isaac by
25 claiming to have received disparate treatment from others similarly situated -- i.e. that he
26 qualifies as a class of one.

27     Plaintiff's first such allegations state that "[t]here are hundreds of inmates who have
28

security concerns with prison gangs, and those inmates chose to refuse to program in protective custody yards, and due to that refusal, those inmates are kept in solitary confinement for their safety." (Id., at p. 12.) Plaintiff alleges that his equal protection rights were violated because he was not afforded the same protection as other inmates since Defendant Isaac and the committee did not keep him in solitary confinement. (Id.) Simply alleging that there are lots of inmates with security concerns with prison gangs does not equate to a showing that Plaintiff was similarly situated to those inmates with security concerns with prison gangs who were allowed to remain in solitary confinement so as to qualify as a class of one. Further, even if Plaintiff was similarly situated to other inmates with security concerns regarding prison gangs, he did not receive disparate treatment since he was retained in ASU at CSP pending transfer. (Id., at p. 13.)

Plaintiff also alleges that "Fresno Bulldogs have violent problems with South Siders as well, and prison officials keep them separated in general population on separate yards. So prison officials discriminated against [him] violating [his] equal protection rights, 14th Amendment [sic] to receive equal treatment as other general population inmates by forcing [him] to program with South Siders and not seperating [sic] [him]." (Id., at p. 14.) Here again, Plaintiff does not state enough factual basis to show that he was similarly situated to Fresno Bulldogs to qualify as a class of one. Plaintiff does not state any similarities between himself and Fresno Bulldogs other than that both have/had violent problems with South Siders (i.e. other common enemies, common amicable inmate groups, national origin, other security concerns, or lack thereof, etc.). The fact that Plaintiff did not ask to be given general population yard time with Fresno Bulldogs also speaks volumes. Defendant Isaac's response that it was not possible for Plaintiff to be placed on a general population yard separate from South Siders implies that additional factors, beyond Plaintiff's incompatibility with South Siders, were involved in placement decisions. In fact, the declaration Plaintiff submitted to the California Superior Court makes it readily apparent that Plaintiff was, at the very least, affiliated with South Siders, if not an actual member of that

1 prison gang.⁹ (Id., at pp. 77-91.) Plaintiff's affiliation with or membership as a South Sider and his violent interactions therein do not equate to membership in a wholly different prison gang. Plaintiff's allegations that Fresno Bulldogs receive general population yard time separate from South Siders does not qualify Plaintiff as a class of one for equal protection purposes.

Accordingly, Plaintiff fails to state a cognizable equal protection claim against Defendants Isaac, Henne, and/or Hanson.

### 3. First Amendment – Access to Courts

Plaintiff alleges that, on June 10, 2008, he filed a complaint and served it on both Defendants Isaac and Clark, but did not receive a response from either of them. (Doc. 22, 1st A.C., at p. 20.) Likewise, Plaintiff alleges that Doe 13 failed to process his complaints to Defendants Isaac and Clark. (Id., at p. 21.) Plaintiff alleges that Doe 13 hampered his ability to exhaust his administrative remedies which violated his right of access to the court under the First Amendment.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). To prevail on a claim, a plaintiff must show that he suffered an actual injury by being shut out of court. Id. at 415; Lewis, 518 U.S. at 351.

Although claims must be exhausted via the inmate appeals process, 42 U.S.C. § 1997e(a), failure to exhaust is an affirmative defense, not a pleading requirement. Jones v. Bock, 549 U.S. 199, 216 (2007). Further, "[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.

---

⁹ This is a key piece of information which Plaintiff omitted, or failed to explain in his allegations which once again calls the truthfulness of his pleadings into question.

Ill. 1982) *accord* Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); *see also* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Plaintiff's allegations do not state a cognizable claim against Doe 13 for interfering with Plaintiff's access to the courts in violation of the First Amendment as Plaintiff has not alleged the existence of any actual injury to litigation. Further, since he does not have a liberty interest, or a substantive right in inmate appeals, and there is no pleading requirement to show exhaustion, Plaintiff fails, and is unable to state a cognizable claim for the processing and/or reviewing of his inmate appeals.

Plaintiff's allegations against Doe 13 for the handling of his inmate appeals so as to prevent Plaintiff from exhausting his administrative remedies do not, and cannot be amended to, state a cognizable claim.

    **4.  Failure to Train**

Plaintiff alleges that Does 11 and 12 failed to provide effective training prior to the June 1st attack. (Doc. 22, 1st A.C., at p. 19.)

Plaintiff's allegations do not show a deficient training program "intended to apply over time to multiple employees;" continued adherence by policymaking defendants "to an approach that they know or should know has failed to prevent tortious conduct by employees;" "the existence of a pattern of tortious conduct by inadequately trained employees [which tends] to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force'

behind the plaintiff's injury;" or "a violation of federal rights [as] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Board of County Commissioners v. Brown, 520 U.S. 397, 407-09 (1997). Further, claims for inadequate training have been found cognizable when stated against municipalities. *See* Board of County Commissioners v. Brown, 520 U.S. 397 (1997); Long v. County of Los Angeles 442 F.3d 1178, 1186 (9th Cir. 2006) *ref.* City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Plaintiff does not name a municipality as a defendant in this action. Plaintiff fails, and is unable to state a cognizable claim against individual defendants based on a single occurrence.

### 5. Supervisor Liability

It appears that Plaintiff has named Warden Clark as a defendant in this action purely because of his position of authority. However, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See* Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "In a §1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." Id. In a claim

1 requiring discriminatory intent, knowledge and acquiescence of a subordinate's misconduct is
2 insufficient to establish liability; each government official is only liable for his or her own
3 misconduct. Id. As previously noted, Defendant Clark is properly dismissed as Plaintiff fails to
4 link him to any factual allegations. Even so, Defendant Clark would only be liable if he
5 personally participated in the offensive conduct, had knowledge and failed to take preventative
6 action, or initiated/implemented a policy that caused the violation – none of which can be even
7 remotely inferred from Plaintiff's allegations.

## II.    CONCLUSION and ORDER

Plaintiff is granted leave to file a second amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff files a second amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick, 500 F.3d at 987-88. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Finally, Plaintiff is advised that a second amended complaint will supercede all previously filed pleadings, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (*citing* London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); *accord* Forsyth, 114 F.3d at 1474.

Plaintiff is reminded of his duty to comply with Rule 11 of the Federal Rules of Civil Procedure. If Plaintiff needs an extension of time to comply with this order, he shall file a

1  request for an extension of time no later than thirty (30) days from the date of service of this
2  order.

3  Based on the foregoing, it is HEREBY ORDERED that:

4  1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

5  2. Within **thirty (30) days** from the date of service of this order, Plaintiff must file a
6  second amended complaint curing the deficiencies identified by the Court in this
7  order; and

8  3. If Plaintiff fails to comply with this order, this action will be dismissed for failure
9  to obey a court order.

11 IT IS SO ORDERED.

12 Dated:     October 18, 2011                    /s/ *Michael J. Seng*
ci4d6                                      UNITED STATES MAGISTRATE JUDGE

-20-